**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHERYL PAPPA,

      Plaintiffs,

          v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, UNUMPROVIDENT
CORPORATION, INTERNATIONAL
CLAIMS SPECIALISTS, INC.,
EXAMINATION MANAGEMENT
SERVICES, INC.,

      Defendants.

NO. 3:07-CV-0708

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' motion to dismiss the Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary

judgment pursuant to Federal Rule of Civil Procedure 56.  (Docs. 8, 9).  Pursuant to this

Court's Order of December 3, 2007, the Court will rule on this motion as a motion to

dismiss.  As Plaintiff has failed to allege the continuity and relatedness requirements to

show a pattern of racketeering, Counts I and III will be dismissed.  Because Plaintiff failed

to allege the substantive RICO claim of 18 U.S.C. § 1962(c), the claims for conspiracy to

violate that section in Counts II and IV will also be dismissed.  Count VI will also be

dismissed, as ERISA preempts Plaintiff's ability to bring an intentional infliction of

emotional distress claim.  The motion to dismiss on Counts V and VII will be denied, as

Plaintiff has properly alleged a claim for defamation and for intrusion upon seclusion.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 ("federal question") under

the federal RICO statute, 18 U.S.C. § 1962,  as well as pursuant to 28 U.S.C. § 1332

("diversity").

## BACKGROUND

The facts as alleged in Plaintiff's Complaint are as follows.

Plaintiff Cheryl Pappa is an adult residing in Lackawanna County, Pennsylvania. (Compl. ¶ 1, Doc. 2 Ex. A.)  Defendant Unum Life Insurance Company of America ("Unum Life") is a corporation authorized to conduct insurance business in the Commonwealth of Pennsylvania.  (*Id.* ¶ 2.)  Defendant UnumProvident Corporation ("UnumProvident") is a corporation authorized to conduct insurance business in Pennsylvania, and is the parent company of Defendant Unum Life, its wholly owned subsidiary.  (*Id.* ¶ 3.)  Defendant International Claim Specialists, Inc. ("ICS") is a corporation authorized to conduct business in Pennsylvania.  (*Id.* ¶ 4.)  Defendant Examination Management Services, Inc. ("Examination Management") is a corporation authorized to conduct business in Pennsylvania, and is the parent company of Defendant ICS, its wholly owned subsidiary.  (*Id.* ¶ 5.)  Defendant alleges diversity in its removal action, as Plaintiff is a citizen and resident of Pennsylvania.  (Removal Petition, ¶ 6, Doc. 1.)  Defendant Unum Life is incorporated in Maine, with principal place of business in Maine.  (*Id.* ¶ 7.)  Defendant UnumProvident is incorporated in Delaware with a principal place of business in Tennessee.  (*Id.* ¶ 8.)  Defendant Examination Management is a Nevada corporation with a principal place fo business in Texas.  (*Id.* ¶ 10.)  Defendant ICS is not a legal entity, as it is an unincorporated division of Examination Management. (*Id.* ¶ 9.)  Plaintiff's complaint does not allege a specified amount of damages, although

the removal petition states that Plaintiff's damages are in excess of $75,000.  (*Id.* ¶ 11.)

In May 2005, Plaintiff Pappa was receiving disability benefits from Defendants Unum Life and UnumProvident pursuant to a long-term disability policy.  (Compl. ¶ 6.)  Plaintiff was receiving these benefits due to a spinal injury which prevented her from working as a Senior Corporate Account Executive at Vanguard Cellular One. (*Id.*)  These injuries made it impossible for the Plaintiff to sit or drive for long periods of time, or to set up displays as required by her employment.  (*Id.*)  During the spring of 2005, Defendants Unum Life and UnumProvident placed an interstate telephone call and/or sent an interstate telefax to Examination Management and ICS requesting that they conduct video surveillance of the Plaintiff.  (*Id.* ¶ 8.)  Defendants Unum Life and UnumProvident requested this video surveillance intending to terminate the Plaintiff's disability benefits, regardless of what the video surveillance disclosed or failed to disclose.  (*Id.* ¶ 9.)  The Defendants conspired with each other to obtain video surveillance to terminate the Plaintiff's disability benefits.  (*Id.* ¶ 10.)

On May 3, 4, and 5, 2005, as part of the conspiracy between Unum Life, UnumProvident, Examination Management, and ICS, video surveillance was conducted at and of the Plaintiff's place of residence in Lackawanna County, Pennsylvania.  (*Id.* ¶ 11.)  In accordance with the conspiracy, Defendants Examination Management and ICS trespassed onto Plaintiff's private property and conducted video surveillance of the Plaintiff's bedroom and bathroom windows without the Plaintiff's knowledge, consent, or approval.  (*Id.*  ¶ 12.)  When the Defendants Examination Management and ICS failed to videotape the Plaintiff, they began following and videotaping Plaintiff's daughter, Erika

Pappa, intending to claim that Erika Pappa was the Plaintiff.  (*Id.* ¶ 13.)  Defendants Examination Management and ICS observed Erika Pappa enter a vehicle at Plaintiff's home, drive on the interstate highways, stop along the way, exit and enter the vehicle, and ultimately end her trip in Hoboken, New Jersey.  (*Id.*)  This surveillance was done with the intent to falsely claim the automobile trip was taken by the Plaintiff.  (*Id.*)  During the course of the trip from Pennsylvania to New Jersey, Defendants Examination Management and ICS exchanged multiple interstate telephone calls with Defendants Unum Life and UnumProvident during which the conspiracy was furthered.  (*Id.* ¶ 14.)

Erika Pappa was thirty-one (31) years old, five (5) feet seven (7) inches tall, weighed one-hundred and fifteen (115) pounds, and had red hair.  (*Id.* ¶ 15.)  In contrast, Plaintiff was fifty-two (52) years old, five (5) feet four (4) inches tall, weighed one-hundred and thirty-five (135) pounds and had brown hair.  (*Id.*)  After the interstate phone calls between the Defendants, Defendants Examination Management and ICS either failed to videotape the face and identity of Erika Pappa despite multiple opportunities to do so, or otherwise videotaped her knowing the video footage establishing her identity would later be erased.  (*Id.* ¶ 16.)

After obtaining the videotaped footage of Erika Pappa, Defendants created a digital video disc (DVD) from the videotaped footage.  (*Id.* ¶ 17.)  However, the Defendants then eliminated from the DVD all original video footage establishing Erika Pappa in the video.  (*Id.*)  The Defendants then claimed that the DVD depicted the Plaintiff driving to New Jersey, an activity that Plaintiff would not be able to perform due to her spinal injuries.  (*Id.*)  After the video footage of Erika Pappa was obtained and altered

by the Defendants, Defendants Examination Management and ICS created a false and fraudulent report alleging that Plaintiff made the trip to New Jersey.  (*Id.* ¶ 18.)  This report states that the person followed from Pennsylvania to New Jersey was the Plaintiff, when Defendants knew it was not.  (*Id.* ¶ 19.)  The original videotape and/or the altered DVD were sent via interstate United States mail by the Defendants to Benjamin Nakkache, M.D., who was retained by Defendants Unum Life and UnumProvident to perform an allegedly independent medical evaluation.  (*Id.* ¶ 20.)  Dr. Nakkache was retained by Unum Life and UnumProvident by interstate telephone and/or interstate telefax.  (*Id.*)  Defendants falsely represented to Dr. Nakkache that the DVD depicted the Plaintiff driving from Pennsylvania to New Jersey in order to manipulate the opinion of Dr. Nakkache.  (*Id.* ¶¶ 21, 22.)  Dr. Nakkache viewed and relied upon the false DVD and false representations made by the Defendants.  (*Id.* ¶ 23.)  Based upon the false representations and false DVD, Dr. Nakkache erroneously concluded that the Plaintiff could return to work.  (*Id.* ¶ 24.)

The same false DVD was also sent by interstate United States mail by the Defendants to Pameal Costello, M.D., Plaintiff's treating physician, with the false representation that the video depicted the Plaintiff driving to New Jersey. (*Id.* ¶ 25.) Defendants Unum Life and UnumProvident also forwarded to Dr. Costello a copy of Dr. Nakkache's medical report.  (*Id.*)

These activities by Defendants Unum Life and UnumProvident were in violation of the Regulatory Settlement Agreement ("RSA") entered into by Defendant Unum Life and other insurance regulators.  (*Id.* ¶ 26.)  In the 2004 RSA, Unum Life agreed to change its

claims procedures to fairly interpret and apply information from a claimant's attending physician and independent medical examiners without any attempt to influence the medical professionals.  (*Id.* ¶ 27.)  In the RSA, Unum Life further agreed to provide all available evidence in the claim file to the medical professionals.  (*Id.* ¶ 28.)  The Defendant Unum Life entered into this RSA after it and its wholly owned subsidiaries engaged in a pattern of deceptive, fraudulent, and illegal claim practices.  (*Id.*)  As part of this pattern, Defendants Unum Life and UnumProvident and/or other wholly owned subsidiaries of the Defendant conducted surreptitious video surveillance of the child of another disabled claimant.  (*Id.*)  This video footage showed the child performing physical activities that the claimant could not perform.  (*Id.*)  Defendants Unum Life and UnumProvident falsely claimed the child was the claimant and terminated the claimant's benefits.  (*Id.*)

Defendants Unum Life and UnumProvident, by knowingly providing the false DVD and misrepresentations to Drs. Nakkache and Costello, continued their pattern of deceptive and fraudulent claim practices, and attempted to influence the opinions of the medical professionals in violation fo the RSA and the rights of the Plaintiff.  (*Id.* ¶ 29.) Defendants withheld the most important portions of the video footage from Drs. Nakkache and Costello - the portions which established that Plaintiff's daughter Erika Pappa was the driver of the vehicle.  (*Id.* ¶ 30.)

After providing the false DVD to Dr. Nakkache and receiving an erroneous medical report from him, Defendants Unum Life and UnumProvident terminated Plaintiff's disability benefits and forcing the Plaintiff to retain an attorney and expend thousands of

dollars to have her benefits reinstated.  (*Id.* ¶ 31.)  After Defendants terminated her benefits, Plaintiff was required to liquidate her retirement funds to pay for necessary living expenses. (*Id.* ¶ 32.)

During the course of the proceedings to have her disability benefits reinstated, the Plaintiff obtained a court order requiring Defendants Unum Life and UnumProvident to produce the true, complete and unaltered original video surveillance taken by the Defendants in May 2005.  (*Id.* ¶ 34.)  Two videotapes were produced.  (*Id.* ¶ 35.)  Both tapes were viewed by counsel for Plaintiff and Defendants at the office of Defendants' counsel prior to the Plaintiff receiving possession of the tapes.  (*Id.* ¶ 36.)  At the viewing of Tape No. 1, it was determined that the footage contained twenty-two (22) minutes and thirty (30) seconds of footage.  (*Id.* ¶ 40.)  However, the case containing Tape No. 1 sent to the Plaintiff states that the tape contains eleven (11) minutes and twenty (20) seconds of footage.  (*Id.* ¶ 39.)

The Plaintiff filed her original Complaint in the Court of Common Pleas of Lackawanna County.  (Doc. 2 Ex. A.)  Plaintiff's Complaint includes seven (7) counts, including violations of 18 U.S.C. § 1962(c) and (d), defamation, intentional infliction of emotional distress, and invasion of privacy via intrusion upon seclusion.  Defendants removed the case to the Middle District of Pennsylvania on April 16, 2007 (Doc. 1-1.)  Defendants filed the present motions to dismiss, or in the alternative, for summary judgment on May 8, 2007.  (Docs. 8, 9.)  On December 3, 2007, the Court ordered that it will rule on this motion as a motion to dismiss.  (Doc. 29.)

The motions are fully briefed and ripe for disposition.

**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As a result of the *Twombly* holding, Plaintiffs must now nudge their claims "across the line from conceivable to plausible" to avoid dismissal thereof.  *Id*. The Supreme Court noted just two weeks later in *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), that *Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id*. (citing *Twombly*, 127 S.Ct. at 1959 (quoting *Conley*, 355 U.S. at 47)).

There has been some recent guidance from the Courts of Appeals about the apparently conflicting signals of *Twombly* and *Erickson.*  The Second Circuit Court of Appeals reasoned that "the [Supreme] Court is not requiring [in *Twombly*] a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.  *Iqbal v.*

8

*Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  Similarly, the Seventh Circuit Court of Appeals stated that "[t]aking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

Until further guidance, this Court will follow the guidance of the Second and Seventh Circuit Courts of Appeals, and apply a flexible "plausibility" standard, on a case-by-case basis, in those contexts in which it is deemed appropriate that the pleader be obliged to amplify a claim with sufficient factual allegations.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v.*

*Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will

ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set

forth information from which each element of a claim may be inferred.  *See Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of

establishing that the plaintiff's complaint fails to state a claim upon which relief can be

granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).


**DISCUSSION**

**I.      Counts I and III - Violation of 18 U.S.C. § 1962(c)**

A.      Standing

_____Defendants argue that the Plaintiff lacks standing to bring a RICO claim pursuant

to 18 U.S.C. § 1962(c) based upon Plaintiff's lack of reliance based upon the ICS

surveillance and the lack of the proper *mens rea* by Defendants.  To have standing,

Plaintiff must further plead injury to her business or property, and that the Defendants

proximately caused such injury.

_____*1.      Reliance*

_____Defendants' first argument states that Plaintiff Pappa lacks standing to bring a civil

RICO claim because she has not been "injured in his business or property *by reason of* a

violation of section 1962."  18 U.S.C. § 1964(c) (emphasis added).  Defendants argue

that Plaintiff has failed to allege reliance to establish injury "by reason of" a predicate act

of mail or wire fraud.  Defendants further argue that to have standing, the Plaintiff must

allege that she relied on and was deceived by the alleged misconduct.  Noting that

Plaintiff relies on mail and wire fraud as her predicate acts, Defendant states that there

must be reliance to create such a predicate act.  In opposition, Plaintiff argues that there

is no requirement that the Plaintiff demonstrate reliance.

The mail fraud statute provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purposes of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . shall be fined under this title or imprisoned not more than 20 years, or both.

See 18 U.S.C. § 1341.  Similarly, the wire fraud statute of 18 U.S.C. § 1343 holds, in

relevant part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The Third Circuit Court of Appeals has held that "A scheme or artifice to defraud need not

be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or

omissions reasonably calculated to deceive persons of ordinary prudence and

comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d

Cir.1991). "The scheme need not involve affirmative misrepresentation, but the statutory

term 'defraud' usually signifies the deprivation of something of value by trick, deceit,

chicane or overreaching." *Id.* (internal quotations and citations omitted).

The Supreme Court has recently granted certiorari to *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 829 (Jan. 4, 2008), specifically limited to the question of "Whether reliance is a required element of a RICO claim predicated on mail fraud and, if it is, whether that reliance must be by the plaintiff." *Id.* Although certiorari has been granted to clarify this issue, at this time, the Court finds that reliance is necessary, although it is not necessary on part of the plaintiff.

"[M]ost courts now agree that reliance must be shown when mail fraud is a predicate act in a civil RICO case." *Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network*, No. Civ. A. 99-4653,  2001 WL 41143, at *4 (E.D. Pa. Jan. 18, 2001) (citing cases from the Fifth, Fourth, Eighth, Sixth, Eleventh, and Second Circuit Courts of Appeals).  The reliance requirement is derived from RICO's proximate cause requirement in 18 U.S.C. § 1964(c), which limits recovery "[a]ny person injured in his business or property *by reason of* a violation." *See Allen*, 2001 WL 41143 at *4.

In this case, Plaintiff states that she herself need not have relied on the misrepresentations.  Rather, she claims that reliance exists on the part of third parties. Plaintiff states that she was the target of Defendants' scheme to defraud her from her benefits, and that the reliance occurred on the part of the physicians who recommended the termination of her benefits based upon the tapes of Plaintiff's daughter.

In *Phoenix Bond & Indem Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007), the case now before the Supreme Court, the Seventh Circuit Court of Appeals considered a RICO claim where no false statements were made to the plaintiff.  The court stated that

"[t]he mail fraud statute . . . defines a fraudulent *scheme*, rather than a particular false statement, as the crime."  *Id.*  In its finding, the court did not require that the plaintiff be taken in by any false statement.  *Id.*

      Furthermore, in *Procter & Gamble Co. v. Amway*, 242 F.3d 539, 564-65 (5th Cir. 2001), the Fifth Circuit Court of Appeals noted a narrow exception to the reliance requirement, holding that "a target of fraud that did not itself rely on the fraud may pursue a RICO claim if the other elements of proximate causation are present."  *Id.*

      In the present case, Plaintiff has sufficiently plead reliance on the part of third parties, in this case, doctors Nakkache and Costello, who ultimately concluded that Plaintiff could return to work and therefore no longer entitled to benefits.  (Compl. ¶¶ 18-25, Doc. 2 Ex. A.)  As Plaintiff has sufficiently plead that she was the "target" of the fraud, and that reliance occurred on the part of a third party, Plaintiff has sufficiently plead the reliance element of mail and wire fraud.

      *2.     Mens Rea*

      Defendants further argues that Plaintiff's RICO claim fails on the basis of the Defendants' *mens rea*.  In *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir. 1991), the Third Circuit Court of Appeals stated that the RICO statute is silent on the issue of *mens rea* for purposes of RICO, and that the legislative history sheds no further light on the issue.  The court further noted that some courts have held that RICO imposes no special *mens rea* requirement beyond the *mens rea* required for the underlying predicate acts.  *Id.* (citing *United States v. Biasucci*, 786 F.2d 504, 512 (2d Cir. 1986), *cert. denied*, 479 U.S. 827 (1986)).  In *Genty*, the court assumed for the purposes of the case that there was no special *mens rea* requirement beyond the commission of the

predicate acts.  *Id.*  The court then discussed the required *mens rea* for the predicate acts

at issue in the case - mail fraud pursuant to 18 U.S.C. § 1341.  *Id.*  In discussing the

*mens rea* required for mail fraud, the court held that "the defendants must have

knowledge of the illicit objectives of the fraudulent scheme and willfully intend that those

large objectives would be achieved."  *Id.* at 908-09 (citing *United States v. Pearlstein*, 576

F.2d 531, 541 (3d Cir. 1978)).

_____In this case, Plaintiff has sufficiently plead the *mens rea* for mail and wire fraud

required to survive a motion to dismiss.  Plaintiff has alleged that Defendants acted

"intentionally" in conducting the surveillance, with intent to terminate Plaintiff's benefits.

(Compl. ¶¶ 8-10, Doc. 2 Ex. A.)  Plaintiff further alleges that Defendants acted with intent

to fraudulently claim that Plaintiff's daughter was the Plaintiff.  (*Id.* ¶ 13.)  Plaintiff alleges

that the report sent to the doctors "willfully, maliciously, and falsely states that the person

followed from Pennsylvania to New Jersey was the Plaintiff, when the Defendants knew

that it was not."  (*Id.* ¶ 19.)  Plaintiff further alleges that these tapes were sent to third

parties, "to falsely claim that the Plaintiff was able to perform the physical activities of her

prior employment, when in fact the Defendants knew she could not, and to falsely

manipulate the opinion of [the third parties]."  (*Id.* ¶ 22.)

Therefore, the Plaintiff has successfully plead the *mens rea* requirement for mail

and wire fraud for the purposes of surviving a motion to dismiss.

> 3.     *Injury to Business or Property*

_____A plaintiff must allege injury "in his business or property" caused by the violation of

RICO.  18 U.S.C. § 1964.  In order to properly allege a RICO violation, the plaintiff must

claim damage to business or property, and cannot allege injury by nature of mental

distress.  *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987).  In

*Zimmerman*, the Third Circuit Court of Appeals noted that a plaintiff seeking recovery

pursuant to RICO must allege injury "in his business or property" which was caused by a

violation of the act.  *Id.* (citing 18 U.S.C. § 1964).  Citing the Supreme Court case of

*Reuter v. Sonotone*, 442 U.S. 330 (1979), the *Zimmerman* court noted that the *Reuter*

Court construed identical language found in the Clayton Act.  The Supreme Court held

that Congress intended the phrase "business or property" to exclude personal injury.

*Zimmerman*, 834 F.2d at 1169 (citing *Reuter*, 442 U.S. at 339).  In *Zimmerman*, the court

noted that the plaintiff only alleged injury in the form of mental distress, which is not an

injury in business or property.  *Id.*  Therefore, the court held that he had no cause of

action under RICO.  *Id.*

     In *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000), the Third Circuit Court of

Appeals held that a lack of damages constituted a lack of standing.  *Id.* at 482 n.7.  In

*Aetna*, the issue before the court was whether the plaintiffs alleged a valid RICO injury to

business or property sufficient to give them standing to sue pursuant to RICO.  *Id.* at 482.

Plaintiffs sued their HMO alleging that they received an "inferior health care" product.  *Id.*

They did not claim a denial of benefits or treatment, but stated that Defendant's

misrepresentations caused them to overpay their premiums.  *Id.*  To have standing to

sue, a plaintiff must demonstrate injury to business or property.  *Id.*  (citing *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *DeMauro v. DeMauro*, 115 F.3d 94, 96

(1st Cir. 1997); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 520-21

(3d Cir. 1998)).

     The Third Circuit Court of Appeals noted that there are two distinct parts of the

standing requirement of 18 U.S.C. § 1964(c) - (1) that the plaintiff suffered an injury to business or property and (2) that the injury was proximately caused by the defendant's RICO violation.  *Id.*  The court further noted that "'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Id.* (quoting *Steele v. Hosp. Corp. Of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).  Such an injury may be satisfied by allegation of actual monetary loss, such as an out-of-pocket loss.  *Id.* However, the *Maio* court held that although the diminution in value of tangible property may create a RICO injury, the plaintiffs' interest was merely a contractual one.  *Id.* at 488-89.

In this case, Plaintiff alleges that she has been injured in her property because she was deprived of funds legally entitled to her, was required to draw upon funds in savings and retirement plans, paid legal fees, had her reputation harmed, and suffered emotional distress.  The damages of harmed reputation and emotional distress do not constitute a RICO injury, as they are personal in nature as per the court in *Zimmerman*.  However, her allegations of drawing upon retirement and savings accounts, and the payment of legal fees, are not personal injuries, and are injuries proper to a RICO claim.  *See Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 258 n.2 (3d Cir. 2007).  Such costs are out-of-pocket, as noted in the *Aetna* case.  Furthermore, the *Weiss* court held that allegations, such as "having had to sell his home and personal property below the property's fair market value as well as having incurred fees and penalties were out-of-pocket expenses fairly traceable to [the defendant's] conduct, and thus qualify as an injury to property for RICO purposes."  *Id.*  Therefore, as the plaintiff has alleged an "actual monetary loss" in the form of attorneys fees to reinstate her benefits, and loss to savings and retirements

16

accounts caused by the denial of benefits, Plaintiff has properly alleged a RICO injury.

4.     *Proximate Cause*

_____Defendants also argue that Plaintiff failed to show that the alleged Section 1962 violation proximately caused the plaintiff's injury to business or property.  The Third Circuit Court of Appeals in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) held that proximate cause is necessary for standing in a RICO claim.  In *Steamfitters*, the court held that the plaintiff's complaint lacked proximate cause because of the remoteness of the alleged injury from the defendants' alleged wrongdoing.  *Id.* at 921.

In this case, Plaintiff's complaint does not demonstrate the level of remoteness found in *Steamfitters.  Id.*  The *Steamfitters* court held that the RICO suit brought by union health and welfare funds against tobacco companies to recover for the funds' cost of treating fund participants who had smoking related diseases demonstrated an injury that was too remote from the activity to satisfy causation.  In this case, Plaintiff alleges that Defendants sent a fraudulent videotape to Plaintiff's physicians, who then concluded that Plaintiff was physically able to return to work.  (Compl. ¶¶ 22-23, Doc. 2 Ex. A.) Plaintiff further alleges the physician relied on this fraudulent videotape in arriving at this conclusion.  (*Id.* ¶ 24.)  Based upon that recommendation, Defendants then terminated Plaintiff's disability benefits, leading to the injuries of the Plaintiff, such as the liquidation of her retirement and savings funds, as well as the costs of her attorneys to reinstate her benefits.  (*Id.* ¶¶ 31-32.)  Therefore, for purposes of a motion to dismiss, Plaintiff has sufficiently alleged the proximate causation between the Section 1962 violation and the injury suffered by the Plaintiff.

17

B.      Section 1962(c) Overview

Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Plaintiff alleges Section 1962(c) RICO violations in Counts I and III.  The difference between the two allegations is that Count I alleges a violation against Unum Life, Examination Management, and ICS, whereas Count III alleges a violation against an additional Defendant, UnumProvident.  Furthermore, Count I alleges that UnumProvident acted as the enterprise, whereas in Count III, Plaintiff alleges an association-in-fact between the four (4) Defendants.

To make a claim pursuant to this provision, the Plaintiff must plead four elements: (1) the existence of an enterprise affecting interstate commerce; (2) that Defendant was employed by or associated with the enterprise; (3) that the Defendant participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the Defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.  *Hollis-Arrington v. PHH Mortg. Corp.,* 205 Fed. App'x 48, 53 (3d Cir. 2006) (non-precedential) (citing *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir. 1999)); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989) (citing *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1352 (5th Cir. 1985)), *abrogated on other grounds in Beck v. Prupis*, 529 U.S. 494 (2000); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)), *abrogated on other grounds in Beck v. Prupis*, 529 U.S. 494 (2000).

18

Defendants argue that Plaintiff has failed to allege a prima facie case because she filed to allege pattern of racketeering activity and that Defendants operated or managed the affairs of the enterprises alleged in Counts I and III.  Defendants also argue that Plaintiff failed to allege a cognizable RICO enterprise-in fact.  Finally, Defendants argue that the claims should be dismissed because they are plead without the required level of specificity.

C.     RICO Enterprise

An essential requirement of RICO is the existence of an enterprise.  *See, e.g.*, 18 U.S.C. § 1962(b) and (c).  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

The Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583 (1981) delineated three (3) factors in establishing an association-in-fact enterprise.  There must be (1) "an ongoing organization, formal or informal"; (2) that "the various associates function as a continuing unit"; and (3) the enterprise exists "separate and apart from the pattern of activity in which it engages."  *Id.*   The enterprise consists of a "group of persons associated together for a common purpose of engaging in a course of conduct."  *Id.*  The Third Circuit Court of Appeals has expanded *Turkette* by requiring that the enterprise acts as an ongoing organization with a framework for making or carrying out decisions, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of racketeering activity.  *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003) (quoting *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983)).  The ongoing nature of an enterprise does not require that all of

the members participate from beginning to end.  *United States v. Parise*, 159 F.3d 790, 795 (3d Cir. 1998) (quoting *United States v. Feldman*, 853 F.2d 648, 659 (9th Cir. 1988)). However, the enterprise must maintain a shared organizational pattern and system of authority.  *Id.* (citing *United States v. Lemm*, 680 F.2d 1193, 1199 (8th Cir. 1982)).

Defendants in this case argue that the Plaintiff has not satisfied the requirements of *Turkette* and *Riccobene*.  First, Defendants argue that the Plaintiff has failed to allege the requisite decision-making structure as required by *Riccobene*.  Second, Defendants argue that Plaintiff has failed to allege that the enterprise-in-fact is separate and apart from the alleged racketeering activity.

At the early juncture of a motion to dismiss, a plaintiff is not required to satisfy the *Turkette* factors.  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 789 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985).  "*Riccobene* and *Turkette* certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. But neither case speaks to what must be pleaded in order to state a cause of action."  *Id.* at 790.  Rather, the Plaintiff must satisfy the definition of 18 U.S.C. § 1961(4) in her pleading.  As held by the *Seville* court, "it is enough that a complaint put the defendants on notice of the claims against him. . . . In the present case, Seville identified that four entities it believed were the enterprises that had been marshalled against it.  The rules of pleading require nothing more at this early juncture than that bare allegation."  *Id.*

Therefore, Plaintiff is not required to demonstrate the *Turkette* and *Riccobene* factors enunciated by the Third Circuit Court of Appeals to demonstrate a RICO enterprise.  Rather, Plaintiff need only allege the existence of an enterprise.

20

In *Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F. Supp. 144 (E.D. Pa. 1986), the district court for the Eastern District of Pennsylvania discussed the creation of a RICO enterprise.  The court noted that "none of the corporate entities named as persons in [the plaintiff's] complaint can *individually* assume the role of the requisite 'enterprise.'" *Id.* at 146.  However, the court held that an association of corporate entities can create a RICO enterprise.  *Id.* at 147.  Although a group of corporations is not specifically listed in 18 U.S.C. § 1961(4), the court held that the list is non-exclusive, and that RICO did not intend to limit the meaning of an "enterprise" to exclude an association of corporate entities.  *Id.*  The defendants in *Moravian* argued that the plaintiff failed to allege an enterprise that was different from the acts that formed the pattern of racketeering activity. *Id.*  Specifically, the *Moravian* defendants argued that the association of the various corporations had no separate and independent existence.  *Id.*  However, the court held that "[a]t this stage of the proceedings, a plaintiff is not required to show that the enterprise is separate from the pattern of racketeering activity in its pleading, but must simply identify the enterprise."  *Id.*  (citing *Seville,* 742 F.2d at 789-90).

The present case is similar to *Moravian*, as Plaintiff alleges an enterprise between various corporations as an association-in-fact -- Defendants Unum Life, UnumProvident, Examination Management, and ICS in Count III.  As in *Moravian*, an association of enterprises may form a RICO enterprise for purposes of pleadings.  Such an allegation is sufficient to survive a motion to dismiss.  In Count I, Plaintiff alleges that Defendant UnumProvident acted as an enterprise pursuant to 18 U.S.C. § 1961(4).  Although such an allegation may not survive the *Turkette* factor that the enterprise be separate from the person, such an allegation is sufficient to survive a motion to dismiss.

21

     C.    Association with and Participation in the Enterprise

     A plaintiff must establish that the defendants were associated with and participated in the "operation or management" of the enterprise.  *Reves v. Ernest & Young*, 507 U.S. 170, 184 (1993).  In *Reves*, the Supreme Court concluded that "to conduct or participate" in the affairs of a RICO enterprise, a defendant must, in some capacity, direct the affairs of the enterprise.  *Id.* at 178-79.  In *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993), the Third Circuit Court of Appeals held that the standard for participation in an enterprise applies in the context of a motion to dismiss.

     In determining whether the *Reves* operation or management test is fulfilled, the *University of Maryland* court stated that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."  *Id.*   Rather, "[t]here must be a nexus between the person and the conduct in the affairs of an enterprise.  The operation or management test goes to that nexus.  In other words, the person must knowingly engage in '*directing* the enterprise's affairs' through a pattern of racketeering activity."  *Id.*  (quoting *Reves*, 507 U.S. at 179 (emphasis added)).

     The *Reves* Court discussed several ways in which a defendant may operate or manage the enterprise.  First, the Court held that operation or management could occur by those associated with the enterprise, but not employed by the enterprise.  *Reves*, 507 U.S. at 184.  The Court gave an example of such behavior, and stated that a defendant could manage or operate an enterprise's affairs through bribery.  *Id.*  However, the Court held that a defendant need not have a significant amount of control over or within the

enterprise.  *Id.* at 179 n. 4.  Plaintiff cites *Reves* for the proposition that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it."  *Reves*, 507 U.S. at 184.  However, the *Reves* Court declined to determine "how far § 1962(c) extends down the ladder of operation because it is clear that [the defendant] was not acting under the direction of [the enterprise's] officers or board."  *Id.* at 184 n. 9.

The Third Circuit Court of Appeals has held that, under *Reves*, "RICO liability may extend to those who do not hold a managerial position within an enterprise, but who do nonetheless knowingly further the illegal aims of the enterprise by carrying out the directives of those in control."  *United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998).

Plaintiff argues that she has properly alleged numerous acts of operation and management, including the alleged video surveillance (Compl.¶¶ 11-16, Doc. 2 Ex. A), the mailing of the videotape to the physicians (*Id.* ¶¶ 20-25), and the erasure of portions of the video footage.  (*Id.* ¶¶ 34-41.)  Defendants argue that ICS and Examination Management were not alleged to have operated or managed the enterprise.  However, as asserted by the Plaintiff in her Complaint, Defendants Unum Life and UnumProvident requested that Examination Management and ICS conduct video of the Plaintiff.  (*Id.* ¶ 8.) The Complaint further alleges that when Examination Management and ICS failed to videotape the Plaintiff, they began following Plaintiff's daughter with the intent to claim the daughter was the Plaintiff.  (*Id.* ¶ 13.)  In the course of following Plaintiff's daughter, Defendants Examination Management and ICS exchanged multiple phone calls with

23

Unum Life and UnumProvident.  (*Id.* ¶ 14.)  The allegations that Defendants ICS and

Examination Management completed the videotape of Plaintiff's daughter satisfies the

pleading requirement for the operation or management of the enterprise.  As required by

*Parise*, these Defendants "nonetheless knowingly further[ed] the illegal aims of the

enterprise by carrying out the directives of those in control."  *Parise*, 159 F.3d at 796.

> D.      Racketeering Activities

In the Complaint, Plaintiff alleges that racketeering activity occurred through acts

of mail and wire fraud.  (Compl. ¶ 50, Doc. 2 Ex. A.)  *See* 18 U.S.C. §§ 1341, 1343,

1961(5).  To properly allege a RICO violation, there must be a pattern of racketeering

activity, which "requires at least two acts of racketeering activity, one of which occurred

after the effective date of this chapter and the last of which occurred within ten years

(excluding any period of imprisonment) after the commission of a prior act of racketeering

activity."  18 U.S.C. § 1961(5).  Mail and wire fraud are included in the definition of

racketeering activity.

In *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989), the Supreme Court

discussed the requirements of pleading a "pattern of racketeering activity."  First, the

Court noted that the requirement of "at least" two (2) instances of racketeering activity

indicating "'that while two acts are necessary, they may not be sufficient.'" *Id.* at 237-38

(quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, n.14 (1985)).  While a "fairly

flexible" concept of pattern is permissible, such a pattern is not formed by "sporadic

activity."  *Id.* at 239 (citing S.Rep. No. 91-617 at 158)).  The legislative history further

demonstrated that RICO liability was not intended to attach to two (2) "'widely separated

and isolated criminal offenses.'"  *Id.* (quoting 116 CONG. REC., at 18940 (1970) (Sen.

24

McClellan)).   To demonstrate a pattern, there must be a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *Id.* at 239 (emphasis in original).  "'A short term scheme threatening no future criminal activity will not suffice.'  Where allegations of the complaint, taken as true, do not support the existence of either long term criminal conduct or threat thereof, dismissal is appropriate."  *Hollis-Arrington v. PHH Mortgage Corp.*, 205 Fed App'x 48, 54 (3d Cir. 2006) (non-precedential) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) and citing *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 598 (3d Cir. 199)).

       Plaintiff alleges that instances of racketeering activity through mail and wire fraud, including various phone calls and mailings between the Defendants and to the third party physicians.  (Compl. ¶¶ 8-10, 14-16, 20-22, 25, Doc. 2 Ex. A.)  The federal mail and wire fraud statutes prohibit the use of interstate mail or wires for the purpose of carrying out a scheme to defraud.  18 U.S.C. §§ 1341, 1343.  Therefore, Plaintiff argues that it has satisfied the requirement of alleging at least two (2) acts of racketeering activity. Furthermore, Plaintiff also alleges in her Complaint Defendants UnumProvident and Unum Life has been involved in similar practices in 1998 where surreptitious video surveillance was taken of the child of a disabled claimant, and the claimant's benefits were then denied.  (Compl. ¶ 28, Doc. 2 Exs. A, F.)  Plaintiff also cites to an agreement signed by Defendant Unum Life and attached to the Complaint, which discusses the claim handling practices of the company.  (Compl. Doc. 2 Ex. E.)

       For racketeering activities to form a RICO violation, there must be a pattern of racketeering activity shown by relatedness and continuity.  The *H.J.* Court discussed the

meaning of relatedness in its discussion of a pattern of racketeering activity.  In this regard, the Supreme Court cited the legislative History of Title X of the Dangerous special Offender Sentencing Act, 18 U.S.C. § 3575 *et seq.*  Relatedness was defined as "acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J.*, 492 U.S. at 239 (quoting 18 U.S.C. § 3575(e)).  Plaintiff argues that she has established relatedness, as the predicate acts of wire and mail fraud alleged occurred in the same transaction.  In contrast, Defendant argues that the 1998 incident discussed in the Complaint, and further described in Exhibit F to the Complaint, is unrelated to the current case.  Defendant argues that because the video surveillance was conducted by a different company, the different sets of actors lead to a finding of unrelatedness.

The Supreme Court then defined "continuity" as both either a closed- or open-ended concept.  *Id.* at 241.  Continuity may be shown by "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.*  (citing *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987)).  Multiple schemes are not required to demonstrate continuity.  *Id.* at 241.  A plaintiff may show continuity through related predicate acts in furtherance of a single scheme if the acts present a threat of long-term continuous criminal activity.  *Id.* at 240.

 The Court further held that

> A party alleging a RICO violation may demonstrate continuity
> over a closed period by proving a series of related predicates
> extending over a substantial period of time. Predicate acts
> extending over a few weeks or months and threatening no
> future criminal conduct do not satisfy this requirement:

> Congress was concerned in RICO with long-term criminal
> conduct. Often a RICO action will be brought before continuity
> can be established in this way. In such cases, liability depends
> on whether the threat of continuity is demonstrated.

*Id.* at 242.  Plaintiff argues that she has sufficiently alleged continuity through the

allegations in her Complaint that a similar activity occurred in Florida in 1998, involving a

claimant who lost his benefits after his son was filmed.  (Compl. Doc. 2 Ex. F.)  In

contrast, Defendants argue that the Plaintiff has failed to allege continuity, as the 1998

incident and the current incident are isolated events, and the predicate acts in the current

incident alone do not satisfy continuity.

Both tests for relatedness and continuity depend heavily on the facts of the case.

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991).  Here, the

Plaintiff has failed to properly allege a pattern of racketeering activity.  Plaintiff alleged a

combination of four (4) predicate acts in the form of wire and mail fraud, as well as a

paragraph describing similar circumstances where Defendant Unum Life was involved in

case where a claimant's son was videotaped, and his benefits were terminated.  As

stated in *Kehr*, "not every single scheme comprising two or more predicate acts will

constitute a pattern." *Kehr*, 926 F.2d at 1412.  The Third Circuit Court of Appeals noted

that the court had previously dismissed two (2) cases containing allegations that lasted

less than eight (8) and seven (7) months respectively, with no future threat of illegal

activity.  *Id.* at 1413.

In the present case, Plaintiff alleges that she was receiving benefits in May 2005

for her disability.  (Compl. ¶ 7, Doc. 2 Ex. A.)  She further alleges that in the spring of

2005, interstate wire transmissions were made regarding the video surveillance of

Plaintiff.  (*Id.* at ¶ 8.)  That video surveillance was conducted on May 3, 4, and 5, 2005.

(*Id.* at ¶ 11.)  Dr. Nakkache rendered his opinion regarding Plaintiff's condition on May 10,

2005, as per the opinion attached to the Complaint.  (Compl. Doc. 2. Ex. C.)  Dr. Costello

was contacted by the Defendants on June 3, 2005, as per documentation attached to the

Complaint.  (Compl. Doc. 2 Ex. D.)  The writ of summons was filed in the Court of

Common Pleas for Lackawanna County in May 17, 2006.  Therefore, the time between

the first predicate act and the writ of summons in state court was only approximately one

year.  The predicate acts themselves - meaning the wire and mail fraud - took place

within the span of approximately one (1) month.  This clearly does not satisfy the

requirement of continuity for a pattern of racketeering acts.  Furthermore, there is no

threat of continued illegal activity, as Plaintiff's disability benefits have been reinstated,

and there is no allegation that there is a continued threat to discontinue those benefits on

fraudulent grounds.

Plaintiff claims that there is continuity in her RICO claims based on two grounds.

First, Plaintiff points to an agreement signed by Unum Life regarding claim handling

practices.  Second, Plaintiff alleges a similar circumstance, where a Florida claimant had

his benefits terminated when his son was videotaped under surreptitious surveillance in

1998.  These allegations do not meet the relatedness requirement, first, because they

involve different surveillance companies.  The previous instance also arose in a different

state approximately eight (8) years ago.  Here, Plaintiff has alleged "'widely separated

and isolated criminal offenses.'"  *H.J.*, 492 U.S. at 239 (quoting 116 CONG. REC., at 18940

(1970) (Sen. McClellan)).  The predicate acts must be *both* related and continuous.

Plaintiff here has failed to allege acts that satisfy both prongs of the test. There is no

28

allegations that these instances are related.

Therefore, Counts I and III will be dismissed for failure to plead a pattern of racketeering activity.

E.      Pleading Pursuant to Federal Rule of Civil Procedure 9(b)

When a plaintiff relies on mail and wire fraud for the basis of a RICO claim, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which states that allegations of fraud must be pled with specificity. *See Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). However, as Plaintiff has failed to properly allege a pattern of racketeering activity, the Court need not reach the issue of the specificity of the allegations.

**II.      Counts II and IV- Violation of 18 U.S.C. § 1962(d)**

Plaintiff's second Count alleges that Defendants conspired to violate RICO, in violation of 18 U.S.C. §1962(d). Section 1962(d) provides, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." The Third Circuit Court of Appeals in *Shearin* set forth the pleading requirements for a RICO conspiracy civil cause of action. *Shearin*, 885 F.2d at 1166-67. To properly plead such a conspiracy, the "plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Id.* at 1166. "Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Id.* at 1166-67 (citing *Odesser v. Continental Bank*, 676 F. Supp. 1305, 1312-13 (E.D. Pa. 1987)).

Plaintiff alleges Section 1962(d) RICO violations in Counts II and IV. The main

difference between the two allegations is that Count II alleges a violation against Unum Life, Examination Management, and ICS, whereas Count IV alleges a violation against an additional Defendant, UnumProvident.

Defendants argue that the Plaintiff's claim for a RICO conspiracy fails on several grounds.  First, the Defendants argue that the conspiracy claim fails because the Plaintiff has failed to allege a violation of Section 1962(c).  Defendants also argue that Plaintiff has failed to allege the basic elements of conspiracy.  Finally, the Defendants argue that the Plaintiff did not allege facts supporting her allegations that the Defendants conspired to operate and manage the affairs of the enterprise.

As stated in *Lum v. Bank of America*, 361 F.3d 217, 227 n.5 (3d Cir. 2004), "'[a]ny claim under section 1962(d) based on conspiracy to violate other subsections of 1962 necessarily must file if the substantive claims are themselves deficient.'" *Id.* (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993)).  In this case, Plaintiff has alleged a violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

As Plaintiff has failed to allege a violation of 18 U.S.C. § 1962(c), the claims in Counts II and IV for conspiracy to violate that section must fail, and Counts II and IV will be dismissed.

### III.    State Law Claims

At this juncture, the Plaintiff has no federal claims remaining, and therefore, no jurisdiction pursuant to federal question.  28 U.S.C. § 1331.  Although the complaint filed in the Lackawanna County Court of Common Pleas did not allege diversity jurisdiction, the removal petition clearly does so. (Removal Petition ¶¶ 6-11, Doc. 1.)  "These

allegations of diversity jurisdiction comport with the requirements of 28 U.S.C. § 1332 (1976)." *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 282 n. 1 (3d Cir. 1980).  "A federal court's jurisdiction must clearly appear from the face of the complaint or removal petition."  *Id.*  (quoting *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972)).  As jurisdiction appears on the removal petition pursuant to diversity, the Court will consider the remaining state law claims on that basis.

A.     Count V - Defamation

Count V of the Complaint alleges that the Defendants Unum Life, UnumProvident, Examination Management, and ICS defamed the plaintiff by providing the false and altered DVD footage of Erika Pappa to Dr. Nakkache and Dr. Costello, and further making misrepresentations to them.  (Compl. ¶ 71, Doc. 2 Ex. A.)  Under Pennsylvania law, a plaintiff in a defamation action has the burden of proving, when the issue is properly raised: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  42 PA. CONS. STAT. ANN. § 8343(a).

Defendants argue that the claim must be dismissed because neither Dr. Nakkache nor Dr. Costello could understand the DVD or the report to be of a "defamatory character."  In a defamation case, "[t]he trial court must determine as a matter of law whether the communication is capable of having defamatory meaning; if not, the claim should be dismissed." *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001) (citing *Baker v. Lafayette College*, 532 A.2d 399, 402 (Pa. 1987)).  If the court determines that a

31

statement is capable of a defamatory meaning, it is then for the jury to determine if the statement was so understood by the recipient of the communication. *Vitteck v. Washington Broad. Co., Inc.*, 389 A.2d 1197, 1199 (Pa. Super. Ct. 1979) (quoting *Corabi*, 273 A.2d at 904).

A statement is defamatory pursuant to Pennsylvania law "if it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Remick*, 238 F.3d at 261 (quoting *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (quoting *Corabi v. Curtis Publ'g Co.*, 273 A.2d 899, 904 (Pa. 1971)). The court must view the statement "'in context' with an eye toward 'the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average person among whom it is intended to circulate.'" *Id.* (quoting *Baker*, 532 A.2d at 402 (quoting *Corabi*, 273 A.2d at 907)). Thus, the court must determine if the statement "'tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession.'" *Id.* (quoting *Corabi*, 273 A.2d at 904).

Taken in context, the videotape surveillance sent to Dr. Nakkache and Dr. Costello is capable of having a defamatory meaning. By sending the videotape of Plaintiff's daughter Erika Pappa driving from Pennsylvania to New Jersey, the Defendants could be implying that Plaintiff was lying regarding her injuries, potentially committing insurance fraud, and was actually capable of returning to work. Whether the doctors actually understood the videotape to have such a meaning is a question of fact. At this time, Plaintiff has properly alleged that the tape could have defamatory meaning in her Complaint. Such a communication may be reasonably construed to convey a defamatory

32

character of the Plaintiff.  Therefore, Defendants' motion to dismiss the defamation claim will be denied.

> B.      Count VI - Intentional Infliction of Emotional Distress

"To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. 1997).  Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!" *Id.*  In addition, to prevail on an intentional infliction of emotional distress cause of action, a plaintiff must provide competent medical evidence to prove the existence of emotional distress. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. Super. Ct. 1996) (holding that, to prevail on intentional infliction of emotional distress claim, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the plaintiff suffered a medically confirmed injury).

Defendants argue that it is undisputed that this matter concerns the handling of Plaintiff's disability benefits claim under a group disability policy governed by ERISA, 29 U.S.C. § 1001 *et seq.*  Section 514(a) of ERISA provides that it "shall supersede any and

33

all State laws insofar as they may now or hereafter relate to any employee benefit plan."
29 U.S.C. § 1144(a).

The Supreme Court has expressly held that causes of action based upon the
improper processing of benefits are preempted.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.
41, 48 (1987).   The phrase relate to "has been given the broadest common sense
meaning, such that a state law 'relates to' a benefit plan if it has connection with or
reference to such a plan." *Shiffler v. Equitable Life Assurance Soc'y of the United States*,
838 F.2d 78, 82 (3d Cir. 1988).  Defendants cite numerous cases where ERISA has
preempted an intentional infliction of emotional distress claim.

"State law claims of emotional distress arising out of the administration of an
ERISA employee benefit plan are also preempted." *Pane v. RCA Corp.*, 868 F.2d 631,
635 (3d Cir. 1989) (dismissing a claim of emotional distress in a severance agreement
case).   The intentional infliction of emotional distress claim both relates to the ERISA
plan and arises out of the administration of that plan.  Plaintiff's distress is based upon
the Defendants' actions in videotaping her bedroom and bathroom windows, as well as
the actions in videotaping Plaintiff's daughter and providing a false video to her
physicians.  (Comp.¶¶ 75-81, Doc. 2 Ex. A.)  The alleged trespass arose from the
administration of the plan, as was the sending of the videotape to Plaintiff's physicians.

Therefore, Plaintiff's intentional infliction of emotional distress claim is preempted
by ERISA, and will be dismissed.

C.      Count VII - Invasion of Privacy (Intrusion Upon Seclusion)

The Defendants move to dismiss Count VII of Plaintiff's Complaint, alleging the tort
of invasion of privacy through an intrusion on seclusion.  The tort is committed when one

34

"intentionally intrudes, physically or otherwise, on the solitude or seclusion of another person, or the person's private affairs or concerns . . . [that] would be highly offensive to [a] reasonable person." *DeBlasio v. Pignoli*, 918 A.2d 822, 824-25 (Pa. Commw. Ct. 2007) (quoting Pennsylvania jury instructions).

Pennsylvania applies the Restatement (Second) of Torts in Intrusion on Seclusion cases. *E.g., Harris by Harris v. Easton Publ'g. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). Under the Restatement, the act of intrusion, which can take the form of "physical intrusion, . . . use of the defendant's senses . . . to oversee or overhear the plaintiff's private affairs, . . . or some other form of investigation or examination into plaintiff's private concerns." RESTATEMENT (SECOND) OF TORTS § 652B cmt. b.

The Pennsylvania Supreme Court has held that when an investigation is based upon reasonable suspicion, and the manner of investigation is reasonable, surveillance by investigators will not invade a plaintiff's right to privacy. *Forster v. Manchester*, 189 A.2d 147, 150 (Pa. 1963). In *Forster*, the court held that when a private investigator for an insurance company followed a plaintiff during her daily activities, videotaped her movements and whereabouts, and followed the plaintiff's car, the investigators' actions were reasonable. *Id.* The court held that "by making a claim for personal injuries [plaintiff] must expect reasonable inquiry and investigation to be made of her claim and to this extent her interest in privacy is circumscribed." *Id.* However, the court specifically noted that all of the surveillance took place in the open where the plaintiff could be observed by the public. *Id.* The court contrasted this scenario with a person in her home, and held that "[t]o the extent [plaintiff] has exposed herself to public observation and therefore is not entitled to the same degree of privacy that she would enjoy within the

confines of her own home." *Id.* In determining that the private investigator's actions were

reasonable, the court found that "there was no trespassing on [plaintiff's] property nor

spying through her windows." *Id.* The court then cites a Louisiana case where the

investigators allegedly trespassed upon the plaintiff's property and peeked into their

windows. *Id.* at 150 n. 8 (citing *Souder v. Pendelton Detectives, Inc.*, 88 So.2d 716 (La.

App. 1956)). Although the Defendants argue that the windows of the Plaintiff's home are

open to the public, the Supreme Court of Pennsylvania has distinguished the surveillance

of a claimant's windows from other public surveillance.

At this time, Plaintiff has sufficiently pled an intrusion upon her seclusion by

alleging that Defendants looked through her bedroom and bathroom windows in

conducting their investigation. Therefore, Defendants' motion to dismiss on this count

will be denied.


**CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the

Defendants' motion to dismiss. Counts I and III based upon 18 U.S.C. § 1962(c) will be

dismissed for failure to allege a pattern of racketeering activity. Count II and IV for

conspiracy will be dismissed, as the underlying substantive claims have been dismissed.

Count VI will also be dismissed, as ERISA preempts Plaintiff's ability to bring an

intentional infliction of emotional distress claim. The motion to dismiss on Counts V and

VII will be denied, as Plaintiff has properly alleged a claim for defamation and for intrusion

upon seclusion.

36

An appropriate Order follows.


March 18, 2008                                      /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHERYL PAPPA,

      Plaintiff,

          v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, UNUMPROVIDENT
CORPORATION, INTERNATIONAL
CLAIMS SPECIALISTS, INC.,
EXAMINATION MANAGEMENT
SERVICES, INC.,

      Defendants.

NO. 3:07-CV-0708

(JUDGE CAPUTO)

<u>**ORDER**</u>

    **NOW**, this __18th__ day of March, 2008, **IT IS HEREBY ORDERED** that Defendants'

motion to dismiss  (Docs. 8, 9) is **granted in part** and **denied in part** as follows:

    (1)    Defendants' motion to dismiss Count I based upon 18 U.S.C. § 1962(c) is

             **GRANTED**.  Count I is **DISMISSED** against all Defendants.

    (2)    Defendants' motion to dismiss Count II based upon 18 U.S.C. § 1962(d) is

             **GRANTED**.  Count II is **DISMISSED** against all Defendants.

    (3)    Defendants' motion to dismiss Count III based upon 18 U.S.C. § 1962(c) is

             **GRANTED**.  Count III is **DISMISSED** against all Defendants.

    (4)    Defendants' motion to dismiss Count IV based upon 18 U.S.C. § 1962(d) is

             **GRANTED**.  Count IV is **DISMISSED** against all Defendants.

    (5)    Defendants' motion to dismiss Count V for defamation is **DENIED**.

    (6)    Defendants' motion to dismiss Count VI for intentional infliction of emotional

             distress is **GRANTED**.  Count VI is **DISMISSED** against all Defendants.

(7)     Defendants' motion to dismiss Count VII for intrusion upon seclusion is

       **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge